# State of Vermont v. Verne Adams

[306 A.2d 92]

No. 116-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

*M. Jerome Diamond,* State's Attorney, for the State.

*Natt L. Divoll, Jr., Esq.,* Bellows Falls, for Defendant.

**Daley, J.** The defendant, Verne Adams, was charged in the District Court of Vermont, Unit No. 6, Windham Circuit, with a violation of 23 V.S.A. § 1201, operating a motor vehicle upon the public highway while under the influence of intoxicating liquor. Trial by jury resulted in a verdict and judgment of guilty. Subsequent to the verdict, the defendant filed a motion to set aside the verdict and a motion for a directed verdict of acquittal. Both motions were denied. The defendant appeals to this Court from the judgment of guilty.

The factual situation is as follows: On March 12, 1972, at about 1:30 a.m., two officers of the Brattleboro Police Department were proceeding in their cruiser to the residence of the wife of an individual who was, at the time, being held at the Brattleboro Police Station. The purpose of the officers' journey was to bring the wife of the individual to the police

station where the individual was being held so that she could be with him.

On their way to pick up the wife, the two officers first observed the defendant leaning on a parking meter post near the residence of the wife. After stopping the cruiser, both officers approached the residence and knocked on the door. While waiting for an answer, the officers again observed the defendant approach a parked automobile, open and close the door of that automobile without entering it. The defendant was then observed by the officers lighting a cigarette, in the process of which he nearly fell to the ground. The officers then saw the defendant proceed down the sidewalk in a swaying and staggering manner. Both officers formed the opinion that the defendant was intoxicated.

The wife then answered the officers' knock. The officers, after waiting for her to get dressed, proceeded to return to the police station with her in the cruiser. Immediately after leaving her residence, they again saw the defendant. Thinking that he might return to the automobile and attempt to operate it, the officers parked their cruiser a short distance away at a point where they could see the parked automobile. Within a short period of time, the officers saw the defendant walk directly toward the parked automobile, enter it, and proceed to operate it down the street.

After the defendant's vehicle passed the point where the cruiser was parked, the officers followed for a few hundred yards until it was parked by the defendant at the curb in front of a diner. The defendant alighted from the vehicle and then was confronted by the officers who testified that he was unsteady on his feet, had the odor of alcohol on his breath and his eyes were bloodshot and watery. The defendant was then arrested and charged with the offense of which he was later found guilty. A chemical analysis of his blood test, to which the defendant consented, revealed a blood alcohol content of 0.16 per cent by weight of alcohol in his blood.

At the trial, the defendant testified in his own behalf. He admitted to the consumption of three cans of beer during the evening and two highballs later in the night prior to his arrest at about 1:30 a.m. He denied being under the influence; he further testified that he did not recall seeing the officers prior

to his being apprehended and, that in his opinion, he was all right at all times material.

By his first ground alleged in his motion to set aside the verdict and for a directed verdict of acquittal, the defendant claims the State was barred and estopped from prosecuting him for the violation of 23 V.S.A. § 1201. The basis of his claim is the allegation of a breach of duty on the part of the complaining officers.

He claims that the officers, having knowledge of his apparently intoxicated condition, became charged with the legal duty of preventing him from operating his motor vehicle instead of secreting themselves and lying in wait to effectuate an arrest for a crime they believed might occur. The actions of the officers and their claimed failure to act is the basis for the estoppel and bar asserted. The claim is one novel to this jurisdiction. None can dispute the premise that prevention of crime is a general duty of all law enforcement officers as stated in the cases relied upon by the defendant in his brief. Such duty is performed constantly in a routine manner by every law enforcement officer patrolling the streets and highways of this State. The defendant, however, has cited to us no authority imposing upon law enforcement officers a duty to apprehend an individual observed in an intoxicated condition so as to prevent him from operating a motor vehicle while in that condition. The conclusion of a duty which the defendant would have us draw is based upon the premise of duty, which under the circumstances shown by the record, is non-existent.

The defendant maintains that the officers had the authority to anticipate the commission of the crime and prevent it before fruition. However, the defendant provides no examples of legitimate law enforcement mechanisms which were permissible to use by the officers in this situation.

In examining the defendant's contention, we first recognize the following quote contained in *Terry* v. *Ohio*, 392 U.S. 1, 9 (1968):

> "No right is held more sacred, or is more carefully guarded by the common law than the right of every individual to the possession and control of his own person,

free from all restraint or interference of others, unless by clear and unquestionable authority of law."

This, of course, does not preclude an officer from engaging in non-restraining encounters with citizens. See *Terry* v. *Ohio*, *supra*. However, the authority to arrest and thus restrain the citizen is governed by clearly defined perimeters. A law enforcement officer, of course, has the authority to arrest and seize a person under a valid warrant. Vt. Const. ch. I, art. 11.

■ An officer also has the authority to arrest, without warrant, one whom he has reasonable cause to suspect is committing or has committed a felony. *State* v. *Crepeault*, 127 Vt. 465, 471, 252 A.2d 534 (1969) ; *In re Huard*, 125 Vt. 189, 192, 212 A.2d 640 (1965). An officer can, without warrant, also arrest for a misdemeanor when that misdemeanor for which that person is arrested was committed in the presence of the officer making the arrest. 13 V.S.A. § 5507; see also *Kurtz* v. *Moffitt*, 115 U.S. 487, 498–99 (1885).

■ ■ Such is the rule for a breach of peace, where an officer has the authority to arrest if this misdemeanor is being committed in his presence. *State* v. *Mancini*, 91 Vt. 507, 510, 101 A. 581 (1917). However, this offense is unique in that an officer can arrest if he reasonably anticipates it is necessary to prevent a breach of peace. *State* v. *Mancini*, *supra*. In such a situation public policy requires quick action by an officer to be necessary to forestall and prevent violent harm to citizens. Thus, actual physical restraint may be necessarily employed to prevent a breach of peace. *State* v. *Crepeault*, *supra*, 127 Vt. at 471.

■ In this case, the defendant appeared to be intoxicated at the time that he was first observed by the officers. However, in order to arrest without warrant for public intoxication, the additional element of disturbing "the public or domestic peace and tranquility" must be present. 7 V.S.A. § 562; *State* v. *Bradbury*, 118 Vt. 380, 383, 110 A.2d 710 (1955). There is no showing in the record that a breach of peace was occurring or reasonably anticipated by the officers prior to the defendant's operation of his vehicle.

The defendant speculates as to the consequences as to the officers' failure to restrain him, in that his operation while intoxicated could have caused physical injury or property damage. However, suspicion and speculation are not enough to justify a warrantless arrest. See generally *Henry* v. *United States*, 361 U.S. 98 (1959).

Therefore, the facts in this case do not establish by what authority the officers would have been operating under by physically restraining the defendant prior to the commission of the offense with which he was charged. Therefore, we cannot subscribe to the defendant's theory that the officers violated a supposed duty in failing to restrain the defendant when no authority was shown for such restraint. Under these circumstances, no public policy justification has been presented to this Court to hold as a matter of law that the State should be estopped from prosecuting the defendant.

The defendant also argues that the lying in wait and the secretion on the part of the officers amounted to entrapment. The elements of entrapment are clearly set forth in *State* v. *Girouard*, 130 Vt. 575, 578, 298 A.2d 560 (1972), and *State* v. *Dragon*, 130 Vt. 334, 339–40, 292 A.2d 826 (1972). There is no showing that such elements are present here. The defendant takes nothing in his assignments of error dealing with the officers' conduct prior to the defendant's arrest.

As a second ground of his motion to set aside the verdict and for a directed verdict of acquittal, the defendant stated:

> "The court charged that if the defendant had a blood alcohol test of over 0.10, he was presumed to be guilty of being under the influence of intoxicating liquor, and that the burden changed to him to prove his innocence, which violates the constitutional presumption of his innocence, and violates his obligations of proof."

During the trial the defendant admitted two of the three elements of the charge; namely, being the operator and the operation of his vehicle upon the public highway at the time and place set forth in the complaint. Thus, the only element remaining for consideration was whether or not he was under the influence of intoxicating liquor.

The defendant also contends in argument before us that the court committed prejudicial error in charging the jury upon the statutory presumption of being under the influence, claiming the presumption created by the result of the blood test under 23 V.S.A. § 1204(3) had been rebutted, therefore had "quit the arena".

The defendant in his trial was entitled to the full effect of the presumption of his innocence and the court being under a duty to charge the effect of the presumption (see 13 V.S.A. § 6502), it fully complied with such duty. As a result of the presence in his blood of 0.16 per cent by weight of alcohol, he became the subject of a presumption, not of guilt or innocence, but of being under the influence of intoxicating liquor, one of the elements of the offense of which he stood charged. This presumption does not outweigh the presumption of innocence which can only be overcome by proof of guilt beyond a reasonable doubt. The statutory presumption of being under the influence cuts off no defense and does not limit the introduction of any competent evidence on the question of whether or not the defendant was under the influence.

When the presumption is established, it becomes prima facie evidence of the fact in issue thereby shifting to the defendant the burden of going forward with evidence upon the issue.

Being a disputable presumption, it shifts to the party against whom it operates the burden of presenting evidence, and the prima facie case would become the established case if nothing further appears. It points out to the party on whom it lies the duty of going forward with evidence on the fact presumed; and when that party has produced evidence fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed and disappears from the arena. *State* v. *Bessette,* 130 Vt. 438, 442, 296 A.2d 179 (1972); *Larmay* v. *VanEtten,* 129 Vt. 368, 371, 278 A.2d 736 (1971).

The defendant's contention that the presumption was rebutted is based upon negative evidence contained in the

testimony of the police officers that they had not observed any erratic or abnormal operation of the vehicle while they followed it. As stated by Mr. Justice Smith in *State* v. *Bessette, supra,* 130 Vt. at 443:

"No matter what the opinion of the trial court might have been at the time of trial, or this Court might consider it to be here, as being sufficient to overcome the evidence afforded by the presumption, it was a question of fact for the jury on whether such evidence was sufficient to rebut the evidence of the presumption."

The evidentiary effect of the chemical analysis, blood alcohol test, was properly explained to the jury. The trial court instructed the jury in connection with the presumption that it did not of itself declare guilt or innocence; that it could accept or reject the test result; and that the question of whether or not the respondent was under the influence was one for their determination from the evidence of the blood test and all other evidence received. No error appears.

The defendant also raises the specter of deprivation of due process in the court's charge to the jury in that it presumed the guilt of the defendant and relieved the State from proving guilt beyond a reasonable doubt. This contention is also a novel one to this jurisdiction. However, an identical contention as the defendant's was before the Supreme Court of Arizona in *State* v. *Childress,* 78 Ariz. 1, 274 P.2d 333 (1954). In that case, the trial court charged both upon the presumption of innocence and the presumption raised by the introduction of the blood alcohol test evidence. Mr. Justice Udall, writing for the court, held that instructions which told the jury in effect that upon proof (beyond a reasonable doubt) of the fact that there was 0.15 per cent or more by weight of alcohol in the blood of the defendant, the law would presume him to be under the influence of intoxicating liquor.

This presumption did not deprive the defendant of due process by presuming his guilt and relieve the State of proving such guilt beyond a reasonable doubt. *Id.,* 274 P.2d at 335. Mr. Justice Udall further held that there was no conflict between an instruction that upon proof of one fact (in that case

and here the blood test results) another fact is presumed and an instruction that the law does not presume the guilt of one accused of a crime. *Id.*, 274 P.2d at 337. We believe this to be the correct statement of the law and so hold.

Finally, our reading of the charge does not lead us to the conclusion that the instructions as given were confusing as the defendant contends. A charge must be taken as a whole and not piecemeal. If as a whole it breathes the true spirit and doctrine of the law and there is no fair ground to say that the jury has been misled, it ought to stand. *State* v. *Bishop*, 128 Vt. 221, 230, 260 A.2d 393 (1969). Such is the case here.

Prejudicial error not having been demonstrated, the trial court's ruling denying the motion of the defendant is sustained.

*Judgment affirmed.*